STATE EX REL. ROBERT L. KANE v. HAROLD E. STASSEN AND OTHERS.[1]

November 15, 1940.

No. 32,477.

524

*J. A. A. Burnquist,* Attorney General, *Chester S. Wilson,* Deputy Attorney General, and *George B. Sjoselius,* Special Assistant Attorney General, for appellants (respondents below).

*Harry W. Oehler,* for respondent (relator below).

HILTON, JUSTICE.

In this proceeding for *mandamus* a demurrer was sustained to the amended and supplemental petition, but after a second amendment it was overruled and the question certified.

Ex. Sess. L. 1937, c. 89, § 11, made provision for relief to honorably discharged disabled war veterans. The state executive council was authorized to designate the agency to administer the relief. On August 5, 1937, the soldiers' welfare division was designated. From August 15, 1937, until January 31, 1939, relator was employed by the state in the disabled war veterans' relief agency. He is an honorably discharged veteran.

On January 27, 1939, the executive council, by resolution, revoked the designation previously made and authorized the state relief agency to perform the duties commencing February 1, 1939. Relator was discharged on January 31, 1939, and alleges that he was not informed until February 1, 1939. Administrative work is now done by the division of social welfare. L. 1939, c. 431, art. VII, § 2(a)(1), 3 Mason Minn. St. 1940 Supp. § 3199-102(a)(1).

In substance, relator charges that his removal was not in conformity with the veterans preference act, 3 Mason Minn. St. 1940 Supp. §§ 4368, 4369, 4369-1; that it was political and the product of conspiracy; and that his position and duties continue.

In the interim between the discharge and the application for the writ on May 3, 1939, the state civil service act, 3 Mason Minn. St. 1940 Supp. § 254-51, *et seq.*, became effective on April 22, 1939.

Under the veterans preference act, 3 Mason Minn. St. 1940 Supp. § 4368, *et seq.*, honorably discharged veterans were given a preference in employment, appointments, and promotions over other applicants in "every public department and upon all public works in the state of Minnesota and the counties, cities and towns thereof." Section 4369 provides:

"Any person whose rights may be in any way prejudiced contrary to any of the provisions of this section, shall be entitled to a writ of mandamus to remedy the wrong."

By the same section no one within the preference act can be removed from his employment "except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, and with the right * * * to review by * * * certiorari."

Section 4369-2 reads:

"No provision of any subsequent. act relating to any such appointment, employment, promotion, or removal shall be

construed as inconsistent herewith or with any provision of said * * * sections 4368 and 4369, * * * unless and except only so far as expressly provided in such subsequent act that the provisions of said sections * * * shall not be applicable or shall be superseded, * * * or repealed."

By the civil service act, 3 Mason Minn. St. 1940 Supp. § 254-79, honorably discharged veterans are granted a preference. Section 254-86 provides:

"The provisions of the 1938 Supplement to Mason's Minnesota Statutes of 1927, sections 4368, 4369, and 4369-1 are hereby superseded by section 31 [§ 254-79] of this act insofar as said sections * * * might be applicable to the state civil service as provided by this act; anything in * * * section 4369-2, to the contrary notwithstanding; * * *."

By the same section honorably discharged veterans holding employment in the classified service on the effective date of the act "are hereby given a permanent classified civil service status * * * and shall thereafter be subject to and protected by the provisions of this act and shall not be subject to the probationary period provided for by section 21 hereof."

We think the veterans preference act so far as relator is concerned was repealed. Whatever rights a veteran has in his employment must be found in the civil service act once his status matured under § 254-86. It is not important that § 254-52 permits selection of the civil service director without reference to the preference act. It is not a legislative recognition of the continuance of that enactment but rather a precaution to dispel question.

When *mandamus* was sued out on May 3, 1939, relator could not show facts supporting the use of *mandamus* to enforce what he conceived to be his rights. The statute authorizing its use was repealed on April 22, 1939. *Mandamus* was only available by statutory grant. Otherwise it would have been improper. State ex rel. Mortensen v:

Copeland, 74 Minn. 371, 77 N. W. 221. Since remedies are not vested rights, see Kipp v. Johnson, 31 Minn. 360, 17 N. W. 957; 25 R. C. L. p. 939, § 191, revocation is not cause for complaint. Minn. Const. art. 1, § 8, which insures a "certain remedy in the laws for all injuries or wrongs," does not guarantee or command continuation of a specific remedy. 1 Dunnell, Minn. Dig. (2 ed. & Supps.) § 1656.

Relator is not without right, however. If he was wrongfully discharged, he must show it. For this reason, some of the points raised by the state going to the merits need not be considered. Our only concern is relator's present position, assuming his discharge was wrongful.

As a state employe relator did not have a vested right in his employment. Veterans, like others, could have been deprived of their positions by legislative abolition, and even if this were done after January 31, 1939, there would be no cause for relator to complain. But the fact cannot be escaped that by the civil service law the veteran's employment was expressly recognized and preserved by granting a permanent civil service status without a probationary period. Had relator not been discharged he would have been blanketed into the civil service on April 22, 1939, by virtue of § 254-86. By the simplest concept of justice, he is entitled to be placed in the same position as he would have been had he not been discharged improperly. Despite his lack of vested right in his employment, after January 31, 1939, he had an accrued right to contest the discharge. We find nothing in the civil service law which indicates that the preference act was to be a nullity prior to the effective date of the civil service law or that rights accrued under it were to be annihilated by the repeal. Is the civil service law, which seeks to continue the employment of the veterans and make a fair exchange between rights under the preference law and under the civil service law, to be the means of destroying all rights which the veterans pref-

erence act intended to promote and insure? Repeal of remedy does not mean loss of right or of consent to suit by the state. We think that by fair intendment there is an intention from the very nature of the situation that rights accrued under the veterans preference act should not be lost.

But to fortify our conclusion is the general saving clause found in 2 Mason Minn. St. 1927, § 10930. While the language is not technically desirable, particularly the word "such," we think it is sufficient to cover the situation at bar. State v. Smith, 62 Minn. 540, 64 N. W. 1022.

The proper procedure is to make application to the state civil service board for a declaration of status. We do not pass upon the merits in any respect. Many points here raised by the state will be proper to present to the board. By § 254-53(2)(g), the director is empowered "to make investigations concerning all matters touching the enforcement and effect of the provisions of this act and the rules and regulations prescribed * * *." The civil service board has power "to hear and pass upon such other matters as the director * * * may from time to time bring before the board for determination." § 254-54(g). By § 254-54(d), it has the power "to make investigations * * * upon petition of a citizen for just cause * * * concerning the enforcement and effect of this act." All these are comprehensive grants. In addition, the civil service board, by the very nature of its purpose and function, has the power to determine the status of an individual claiming to be entitled to a permanent civil service status.

The order is reversed with directions to discharge the writ without prejudice.

Reversed with directions.